UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVENSON B. FRANK, | CASE NO. 5:17CV774 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Stevenson B. Frank ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on July 21, 2017, Plaintiff asserts that the administrative law judge ("ALJ"): (1) committed reversible error by failing to call a medical expert; (2) committed reversible error by failing to find that Plaintiff's spinal stenosis was a severe impairment; (3) failed to base the finding that Plaintiff could perform medium work on substantial evidence; and (4) failed to support the credibility determination with substantial evidence. ECF Dkt. #11. Defendant filed a response brief on August 21, 2017. ECF Dkt. #13. Plaintiff did not file a reply brief.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on January 14, 2014, alleging disability beginning January 1, 2012. ECF Dkt. #10 ("Tr.") at 13.[2] The application was denied initially

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than

and upon reconsideration. *Id.* Plaintiff then requested a hearing, which was held on December 9, 2015. *Id.* at 24. On January 7, 2016, the ALJ issued a decision denying Plaintiff's claim. *Id.* at 10. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the January 7, 2016, decision issued by the ALJ stands as the final decision.

The instant case was filed by Plaintiff on April 11, 2017. ECF Dkt. #1. Plaintiff filed his brief on the merits on July 21, 2017. ECF Dkt. #11. Defendant filed a response brief on August 21, 2017. ECF Dkt. #13. Plaintiff did not file a reply brief.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

On June 1, 2011, prior to his period of alleged disability, Plaintiff presented to his primary care physician, Kenneth Wells, M.D., with left foot pain that worsened with walking or bearing weight.[3] Tr. at 294. On examination, Plaintiff displayed tenderness in his left foot on compression between the second and third digits. *Id.* Plaintiff underwent an MRI on June 29, 2011, which showed buckle fractures at the second metatarsal with bone marrow edema. *Id.* at 300-301. An additional MRI taken on August 22, 2011, continued to show a fracture, but it was noted that there was significantly less bone marrow edema. *Id.* at 298. Plaintiff visited Dr. Wells on August 24, 2011, complaining of arthritis, back pain, and knee pain. *Id.* at 271. Dr. Wells assessed that Plaintiff had generalized osteoarthritis and administered a steroid injection. *Id.* Plaintiff returned to Dr. Wells on September 8, 2011, with complaints of knee pain. *Id.* at 269. The physical examination appeared unremarkable. *Id.* Plaintiff visited Dr. Wells on October 13, 2011, complaining of knee pain, and Dr. Wells assessed primary localized

---

the page number assigned when the Transcript was filed in the CM/ECF system.

[3]Plaintiff's insured status expired on March 31, 2012. Tr. at 15, 47, 52, 115, 117, 131. To be eligible for disability benefits under Title II, Plaintiff must establish that he became disabled before the expiration of his insured status. *See* 42 U.S.C. §§ 416(i)(2)(C), 416(i)(3)(B); 20 C.F.R. § 404.130. Plaintiff alleged a disability onset date of January 1, 2012. Tr. at 13. Accordingly, the relevant period in this case is between January 1, 2012, through March 31, 2012. *See id.* ("[Plaintiff's] earning records show that [Plaintiff] has acquired sufficient quarters of coverage to remain insured through March 31, 2012. Thus, [Plaintiff] must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits").

osteoarthritis in the lower leg, generalized osteoarthritis, and benign essential hypertension. *Id.* at 267. Plaintiff's knee was tender and he was given an injection. *Id.* at 288-89. On October 20, 2011, another MRI showed that the fracture in Plaintiff's left foot was healing and that adjacent soft tissue enema remained present. *Id.* at 304.

Plaintiff visited Dr. Wells on one occasion during his alleged period of disability, on January 5, 2012, for joint pain and refills of his medication. Tr. at 265, 286. At this visit, Dr. Wells noted that Plaintiff complained of joint pain and recommended lifestyle modifications to control Plaintiff's hypertension. *Id.* A review of Plaintiff's systems and a general examination produced normal results. *Id.* Dr. Wells assessed benign hypertension, generalized osteoarthritis, gout (unspecified), mixed hyperlipidemia, mild stage two chronic kidney disease, and vitamin D deficiency. *Id.* at 265-66, 286-87.

In July 2012, after his alleged period of disability, Plaintiff continued to complain of joint pain. Tr. at 262, 283. Dr. Wells noted that Plaintiff's hypertension was still the primary goal of his care. *Id.* A review of Plaintiff's systems and a general examination again produced normal results. *Id.* Dr. Wells refilled Plaintiff's Vicodin prescription for his osteoarthritis. *Id.* at 263, 284. An MRI of Plaintiff's lumbar spine taken in January 2013 showed disc bulges with facet arthropathy and mild to moderate spinal stenosis. *Id.* at 203. In February 2013, Plaintiff began treating with Dmitri Souzdalnitski, M.D., who examined Plaintiff and noted tenderness, decreased range of motion, a positive facet loading test, a positive straight leg raise test, a positive sacroiliac joint provocation test, and antalgic gait. *Id.* at 190, 193, 198, 203, 206. Plaintiff continued to complain of back pain and receive various treatments, including epidural steroid injections and warm pool therapy, from February 2013 to June 2013. *Id.* at 196-98, 201, 203, 218-34, 237, 241-45. On August 8, 2013, Plaintiff underwent lumbar decompression surgery. *Id.* at 237. Dr. Wells prescribed a handicapped placard on December 13, 2013, and Dr. Souzadalnitski prescribed a walker with a seat and brake on March 16, 2014. *Id.* at 191, 216.

### **B.** **Testimonial Evidence**

The ALJ held a hearing on December 9, 2015, with Plaintiff, his attorney, and a vocational expert ("VE") present. Tr. at 24, 26. Upon examination by the ALJ, Plaintiff

-3-

testified that his last job had been insurance adjusting for wind damage and that he worked the job sparingly in 2011 and 2012. *Id.* at 29. Continuing, Plaintiff stated that this work required him to stand and, more often than not, use a ladder to climb. *Id.* Plaintiff indicated the ladder he used weighed forty to fifty pounds. *Id.* at 30. Next, Plaintiff testified that his prior work was carpentry, which he performed in 2009 and 2010. Plaintiff stated that this job required him to lift thirty to forty pounds. *Id.* at 31. When asked why he stopped performing carpentry, Plaintiff indicated that he stopped being able to perform jobs in a timely manner or complete a full day of work. *Id.* Plaintiff then testified that he had not performed any other job in the prior fifteen years, but that he had done some volunteer work. *Id.* at 31-32.

Next, Plaintiff stated that he drove to the hearing. Tr. at 33. Plaintiff indicated that he did not have any hobbies. *Id.* When asked about a normal day, Plaintiff testified that he: woke at 8:00 A.M. or 8:30 A.M.; made his father coffee and helped him dress; got breakfast with his father and then had coffee; went out to get lunch or a haircut on "a lot of days"; washed the dishes; and usually could perform chores. *Id.* at 33-34. The ALJ then inquired about his problems in 2011. *Id.* at 34. Plaintiff testified that he "had a lot of pain," and had broken his foot and had to wear a boot and that he "was never really able to get back out and go again after that." *Id.* When asked how much he could lift at the time of the hearing, Plaintiff stated that he could lift thirty pounds, and noted that he could lift sixty to seventy pounds in 2011. *Id.* at 37. Plaintiff indicated that he had problems with his hands since high school that had gotten worse, denied problems with his arms, and stated that he could walk the length of a football field. *Id.* at 37-38. Continuing, Plaintiff testified that his walking problems "got really bad" in 2012. *Id.* at 38. Plaintiff also stated that he did not have many problems sitting, but needed to rise occasionally and move around a little bit. *Id.*

Next, Plaintiff was examined by his attorney. Tr. at 39. Plaintiff testified that he underwent back surgery in 2013 and that the procedure improved his condition for thirty day before "it just started going downhill and was back to where it was." *Id.* at 40. Continuing, Plaintiff stated that he had four or five injections in his knee. *Id.* After Plaintiff's attorney finished examining Plaintiff, the ALJ examined the VE. Tr. at 41. The ALJ posed a

hypothetical individual of the same age, education, and work experience as Plaintiff with the following limitations: work at the medium level; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and frequently stoop, kneel, crouch, and crawl. *Id.* at 42. The VE testified that the hypothetical individual would be unable to perform Plaintiff's past work as he performed it but could perform carpentry work at the medium level, and clarified that Plaintiff previously performed carpentry work at the heavy level. *Id.* at 42-43. Additionally, the VE stated that such an individual could perform a large range of work at the medium level, and gave the jobs of hand packager, counter supply worker, and kitchen worker/helper as examples. *Id.* at 43. The ALJ then added the limitation that the hypothetical individual could not be exposed to unprotected heights, and the VE testified that this additional limitation would not impact the jobs the hypothetical individual could perform. *Id.* at 44. Plaintiff's attorney indicated that he did not have any questions for the VE and the ALJ concluded the hearing. *Id.* at 44, 46.

### III.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After the hearing, the ALJ issued a decision on January 7, 2016. Tr. at 10. The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2012, and that he did not engage in substantial gainful activity during the period of his alleged onset date of January 1, 2012, through the date last insured of March 31, 2012. *Id.* at 15. Continuing, the ALJ stated that through the date last insured, Plaintiff had the severe impairments of osteoarthritis and a history of fracture - second metatarsal. *Id.* After considering the record, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional limitations: never climbing ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; and avoid unprotected heights. *Id.* at 16.

The ALJ then stated that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. at 17. Continuing, the ALJ indicated that Plaintiff was an individual of advanced age on the date last insured, had at least a high school education, and was able to communicate in English. *Id.* at 18. The ALJ then stated that the transferability of job skills was

not material to the determination of disability because the medical Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in the national economy that Plaintiff could perform through the date last insured. *Id.* For these reasons, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 1, 2012, the alleged onset date, through March 31, 2012, the date last insured. *Id.* at 19.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

**VI.    LAW AND ANALYSIS**

**A.    Medical Expert**

Plaintiff first asserts that the ALJ committed reversible error by failing to call on the services of a medical expert to determine the onset and severity of his impairments. ECF Dkt. #11 at 7. Continuing, Plaintiff states that an ALJ is not required to call on a medical expert to infer the onset of disability if the medical record is well developed and carefully reviewed by the ALJ, and that a medical expert needs to be called when there is no development of the medical record on which the ALJ can rely to ascertain the onset date. ECF Dkt. #11 at 7 (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Martin v. Comm'r of Soc. Sec.*, No. 12-14773, 2014 WL 1048150, at *18 (E.D. Mich. Mar. 18, 2014)).

Plaintiff asserts that the record covering the period at issue is ambiguous as to his alleged onset date, as well as the severity of his impairments during that period and their functional impact, noting that Defendant found "insufficient evidence for the T2, DLI in the past, period of the claim." ECF Dkt. #11 at 8 (quoting Tr. at 55). Continuing, Plaintiff states that while the ALJ did find evidence of severe impairments sufficient to formulate an RFC assessment during the relevant period, the RFC finding did not account for Plaintiff's spinal stenosis. *Id.* Plaintiff states that the condition was present for the entire relevant period and "became objectively documented by an MRI study dated January 10, 2013 - only eight months after the DLI." *Id.* Further, Plaintiff asserts that given the severe pathology documented by the MRI, it is reasonable to infer that the impairments were present during the relevant period. *Id.* For these reasons, Plaintiff claims that medical expert testimony is necessary to evaluate the onset and severity of his impairments, as well as to assess any functional limitations arising from the impairments during that period. *Id.*

Defendant contends that the ALJ properly developed the record. ECF Dkt. #13 at 8. Specifically, Defendant states that Plaintiff relies on Social Security Ruling ("SSR") 83-20 but fails to recognize that this ruling only requires a medical expert when there has been a clear finding of disability and it is necessary to determine when the disability begins. *Id.* (citing *Clendening v. Comm'r of Soc. Sec.*, 482 F. App'x 93, 95-96 (6th Cir. 2012)). Defendant then avers that the ALJ had sufficient information to evaluate Plaintiff's condition during the relevant period and that the burden to produce medical evidence supporting Plaintiff's claim is on him, not the ALJ. *Id.* (citing 20 C.F.R. § 404.1512, 404.1513). Continuing, Defendant states that when the record contains a sufficient amount of evidence pertaining to an impairment, it is not an abuse of discretion to decline to obtain an additional assessment. *Id.* (citing *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013)). Defendant asserts that the record was sufficiently developed and there was enough evidence to determine Plaintiff's RFC. *Id.* at 9. Additionally, Defendant notes that the ALJ was limited in the type of additional evidence that could be obtained as it would be impossible for the ALJ to obtain a consultative examination that would assess Plaintiff's past condition, as the relevant period in this case concluded in March

2012. *Id.* Defendant also notes that Plaintiff acknowledged that the medical record was complete. *Id.* (citing Tr. at 27).

Plaintiff bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512. Here, Plaintiff essentially claims that Defendant was required to obtain a medical expert to compensate for Plaintiff's failure to produce evidence supporting his claim that he is disabled. Plaintiff's interpretation of the regulations would require remand to obtain the opinion of a medical expert whenever the claimant believed that the record did not contain enough medical evidence to show that he or she was disabled, circumventing the burden of proof placed on the claimant. Further, the record is not ambiguous as to the onset date or severity of Plaintiff's impairments as it contains all objective medical evidence in existence at the time of the hearing, as acknowledged by Plaintiff. Tr. at 27. Additionally, Plaintiff fails to explain how a medical expert, if obtained at the time of the hearing in December 2015, could have assessed his impairments during the alleged period of disability from January 1, 2012, to March 31, 2012. For these reasons, the undersigned recommends that the Court find that a medical expert was not required in this case.

### B. **Severe Impairment**

Next, Plaintiff asserts that the ALJ committed reversible error by failing to find his spinal stenosis to be a severe impairment within the meaning of the regulations. ECF Dkt. #11 at 8. Plaintiff states that the ALJ failed to explain why it was determined that his spinal stenosis and hypertension were not severe impairments. *Id.* at 9. Continuing, Plaintiff indicates that his spinal stenosis is documented in the record, caused significant pain, and interfered with his ambulation and activities of daily living. *Id.* Plaintiff cites medical evidence from October 2013, December 2013, and March 2014 to support his assertions, before stating, without further citations, that his "pain levels from spinal stenosis are consistently documented in the record, and have been for at least three years." *Id.* at 10.

Defendant contends that the ALJ properly determined Plaintiff's severe impairments and appropriately declined to list spinal stenosis among the severe impairments. ECF Dkt. #13 at 6. Continuing, Defendant states that the medical records from the relevant time period, January 1, 2012, to March 31, 2012, do not suggest spinal stenosis or significant complaints of back pain.

*Id.* Defendant asserts that in the months prior to, during, and after the relevant period, Plaintiff's physical examinations were relatively unremarkable. *Id.* at 6-7 (citing Tr. at 262-63, 265, 269, 283-84, 286). According to Defendant, the medical records reflect only one complaint of back pain, occurring on August 24, 2011, which Defendant notes was not during the relevant period. *Id.* at 7 (citing Tr. at 271). Defendant points out that the first mention of spinal stenosis in the medical record was in February 2013. *Id.* Moreover, Defendant asserts that nothing in the regulations requires the ALJ to identify all of the impairments that should be considered severe at step two of the sequential evaluation. *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(ii)).

Plaintiff's argument is without merit. The medical evidence cited by Plaintiff in support of his claim that the ALJ should have determined that his spinal stenosis was a severe impairment post-dates the relevant period in this case. *See* ECF Dkt. #11 at 9-10 (citing Tr. at 190, 198, 201, 203, 207, 218-34, 237, 241-45, 247, 278). Plaintiff claims that his pain levels from spinal stenosis had been documented in the record for "at least three years," but cites no medical evidence in support of such a claim beyond a single instance in August 2011 where he complained of low back pain. *Id.* (citing Tr. at 278). The treatment note cited by Plaintiff was not from August 2011, but was instead from October 2012 - after the relevant period. *See* Tr. at 278. One treatment note from August 24, 2011, does indicate that Plaintiff complained of back pain, but this complaint is isolated to this visit with Dr. Wells. Tr. at 271. Plaintiff also briefly asserts that the ALJ should have found his hypertension was a severe impairment, but then makes no further mention of his hypertension or why the ALJ should have found it to be a severe impairment. *Id.* Accordingly, Plaintiff's has failed to show that the ALJ should have determined that his spinal stenosis constituted a severe impairment.

### C. **RFC Finding**

Plaintiff also asserts that the ALJ's finding that he could perform medium work is not based on substantial evidence. ECF Dkt. #11 at 10. Specifically, Plaintiff states that the record shows that he suffered from pain in his back and legs that restricted his ability to ambulate. *Id.* at 11. Plaintiff cites: his report that his pain was 9/10 when walking; pain in his back and lower extremities as a result of spinal stenosis and osteoarthritis; pain in his foot due to

metatarsal fractures; a decreased range of motion and an antalgic gait; and his testimony that, at the time of the hearing, he could only lift thirty pounds, stand for five minutes, and walk 100 yards. *Id.* at 11 (citing Tr. at 191, 198, 206, 227-28, 232, 291-92, 294). Further, Plaintiff states that his prior work as a carpenter was medium work and he had to stop due to his impairments. *Id.* (citing Tr. at 31, 134-35, 176). Plaintiff states that he, at most, could perform sedentary or light work. *Id.*

Defendant reasserts that Plaintiff bears the burden to prove his RFC and that the ALJ appropriately determined Plaintiff's RFC based on the evidence of record. ECF Dkt. #13 at 11. Specifically, Defendant states that the ALJ often noted that Plaintiff's medical records were normal. *Id.* (citing Tr. at 17-17, 262-63, 265, 269, 283-84, 286). Defendant also notes that Plaintiff testified that during the relevant period he could lift sixty to seventy pounds, and that medium work imposes less burdensome requirements. *Id.*

Plaintiff essentially argues that the ALJ's decision is not based on substantial evidence and cites evidence that he believes shows that he was disabled. ECF Dkt. #11 at 10-11. As stated above, the substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937. Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 F.3d at 234. Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "zone of choice within which [an ALJ] can act without the fear of court interference." *Buxton*, 246 F.3d at 773.

The ALJ's decision is based on substantial evidence. First, the ALJ discussed the fracture of Plaintiff's second metatarsal with bone marrow edema, and stated that examinations in the final quarter of 2011 revealed some tenderness in the lower left extremity and foot with no swelling and that no other abnormalities were noted. Tr. at 17. Additionally, the ALJ stated that examinations administered in January 2012 and July 2012 were relatively normal, and that while Plaintiff complained of left lateral foot pain, no other abnormalities were noted. *Id.* The ALJ

-11-

also noted that the state-agency medical consultants determined that Plaintiff had no severe impairments during the period of adjudication. *Id.*

It is recognized by the undersigned that the ALJ's discussion of the medical and opinion evidence in this case is relatively brief, however, the medical record in this case is itself brief. *See* Tr. at 189-304. Further, while Plaintiff cites to medical evidence he believes shows that the ALJ's decision did not consider all of the evidence and was thus not supported by substantial evidence, this evidence is from after the period that is relevant for the determination of disability. *See* ECF Dkt. #11 at 11 (citing Tr. at 190, 198, 206, 227-28, 232). Plaintiff cannot show that he was disabled during the relevant period, from January 1, 2012, to March 31, 2012, by citing evidence from 2013 and 2014. Moreover, the assertions made by Plaintiff in his brief that he could only lift thirty pounds, stand for five minutes, and walk 100 yards do not reflect his abilities during the relevant period, but instead describe his abilities at the time of the hearing held on December 9, 2015. *See* Tr. at 37-38. For these reasons, the undersigned recommends that the Court find that the ALJ's RFC finding is based on substantial evidence.

### D.     Credibility

Finally, Plaintiff asserts that the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible because the medical evidence is consistent with a finding of disability. ECF Dkt. #11 at 11-12. Plaintiff states that the ALJ completely disregarded the medical records pertaining to Plaintiff's osteoarthritis and spinal stenosis and based the determination entirely on records pertaining to his foot when making the credibility finding. *Id.* at 12. Continuing, Plaintiff states that he complained of pain in his right knee throughout 2011. *Id.* at 13 (citing Tr. at 271, 288, 290). Plaintiff also states that he received multiple steroid injections in his knee in 2011. *Id.* (citing Tr. at 217, 288). Additionally, Plaintiff again erroneously states that he first complained of back pain in August 2011, citing to a treatment note from October 2012.[4] *Id.* (citing Tr. at 278).

---

[4]It is presumed that Plaintiff intended to cite to the treatment note from August 24, 2011. *See* Tr. at 271.

Defendant avers that the ALJ properly weighed the consistency of Plaintiff's subjective complaints with the record as a whole. ECF Dkt. #13 at 9. Continuing, Defendant states that Plaintiff testified that he had: debilitating back pain; limitations standing and walking; and problems with his foot. *Id.* at10. Defendant also states that Plaintiff testified that his foot never healed. *Id.* According to Defendant, Plaintiff's physical examinations during and in the months before and after the period of adjudication were generally unremarkable with few abnormal findings. *Id.* (citing Tr. at 16-17, 262-63, 265, 269, 283-84, 286). Defendant also states that Plaintiff's treatment notes do not reflect complaints to his healthcare providers of debilitating back pain during or in the months surrounding the relevant period. *Id.* (citing Tr. at 16-17, 262-63, 265, 269, 283-84, 286).

Plaintiff's argument is without merit. The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. at 16. ALJs are not required to accept a claimant's subjective complaints and their findings about a claimant's credibility are afforded great weight and deference. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The ALJ's credibility finding is supported by the record. The medical records from the months surrounding the relevant period make little mention of an problems with Plaintiff's back. *See* Tr. at 16-17, 262-63, 265, 269, 271, 283-84, 286. Moreover, the only piece of evidence cited by Plaintiff regarding back pain is from October 2012, after the relevant period. *See* Tr. at 278. Even assuming Plaintiff intended to cite to the treatment note from August 24, 2011, this complaint is isolated to this visit with Dr. Wells. *See* Tr. at 271. The ALJ did not err in finding Plaintiff less than fully credible when he alleged disabling back pain that was not supported by the record. In fact, the only piece of medical evidence that was prepared during the relevant period, specifically on January 5, 2012, makes no mention of any complaint of back pain. Tr. at 265-66. Regarding Plaintiff's argument insofar as it references knee pain and foot pain, Defendant correctly states that physical examinations from the months surrounding the relevant period were relatively unremarkable. *See* Tr. at 16-17, 262-63, 265, 269, 271, 283-84, 286. Accordingly, the undersigned recommends that the Court find that the ALJ's credibility determination is supported by substantial evidence.

-13-

### **VII.    CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: July 19, 2018                         */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).